No. 43,159

STATE OF KANSAS, *Appellee,* v. THOMAS HARRY WADE, *Appellant.*

(376 P. 2d 915)

Opinion filed December 8, 1962.

*Roy Kirby,* of Coffeyville, argued the cause and was on the briefs for the appellant.

*B. D. Watson,* assistant county attorney, argued the cause, and *William M. Ferguson,* attorney general, and *Glen Tongier,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This appeal in a criminal proceeding is from the verdict of the jury finding defendant guilty, under the first count in the information, of grand larceny of personal property in excess of the

value of $400.00 belonging to Mr. and Mrs. Ray Payne which property had been placed in the Payne 1959 Rambler station wagon. The jury's verdict also found defendant guilty, under the second count in the information, of attempted grand larceny of the station wagon.

In the complaint filed in the city court of Independence a third count had been included charging defendant with a misdemeanor for malicious destruction of personal property and damages thereto in the amount of $15.00 which resulted from the breaking out of a window vent in the left front door of the Payne station wagon. Defendant had been found guilty of the misdemeanor and was sentenced to serve ninety days in the Montgomery county jail. Defendant had appealed from that conviction. The city court of Independence had bound defendant over to the district court of Montgomery county for trial on the above-mentioned two felony counts. After the appeal and the information, which had also originally included the misdemeanor charge as a third count, were lodged in the district court, the state dismissed from the information such third count based on the misdemeanor. Thus defendant stood for trial on the first and second counts charging felonies before the jury in the district court.

The Paynes, residents of Oklahoma City, Oklahoma, conducted a retail piece goods business. They purchased supplies in Kansas City and on their return trip home on the night of May 3, 1961, registered at a motel near Cherryvale. They parked their station wagon with merchandise inside in a place provided for that purpose and locked it. It was and had been raining. About midnight Mrs. Delores Driskel, a co-owner of the motel, saw a blue and white Buick automobile around the motel. About 1:30 a. m. she saw that the Buick was stuck in the mud in the driveway of the motel and the Payne station wagon was in front of it. A man she did not recognize got out of the Buick. She awakened her husband, they went outside, but found no one. About thirty minutes later she was again awakened and saw a red and white pickup truck behind the Buick. She saw two men and recognized one of them as Joe Vasquez (who was originally charged as co-defendant with defendant). The two men were attempting to hook a chain onto the Buick and then onto the station wagon. She and her husband went out and told them to leave the car there until morning. However, the men were able to get the Buick out and they left the premises. About 3:00 a. m. she was again awakened and recognized Vasquez and the other man

whom she did not know. They were trying to hook a chain from the pickup truck to the Payne station wagon. She ran outside. Vasquez dropped the chain and the two men jumped into the pickup truck and drove southward.

At this time Mr. Payne was awakened and he found that his station wagon had been moved some twenty or thirty feet, the vent glass on the left front door was broken, the dome light had been torn out, and twenty-nine bolts of material together with other merchandise had been removed therefrom. A log chain was found hooked over the bumper of the station wagon. He drove the station wagon back to its original parking place and the sheriff was called to the scene.

On the way over to Cherryvale from Independence the sheriff and undersheriff saw the Vasquez pickup truck and defendant's Buick automobile with their owners in them parked side by side on the highway south of Cherryvale. The undersheriff recognized both vehicles and both men.

Officer Kolb of the Cherryvale police department saw and recognized Vasquez and defendant in the Vasquez pickup truck as they drove out of the motel about 3:00 a. m. He followed the truck south to an intersection of the highway with a county road and the truck turned west on the county road.

Later that day the sheriff arrested Vasquez and defendant and took the pickup truck and the Buick into custody. The sheriff found the articles of personal property taken from the Payne station wagon in an abandoned farmhouse near Cherryvale. The sheriff had plaster casts made of automobile tire tracks found in the mud around the abandoned farmhouse. Upon advice of the county attorney the sheriff removed the tires from defendant's Buick and also searched his car. Over the objection of defendant, a piece of white paper tape removed from defendant's Buick was favorably compared with tapes left on the bolts of material remaining in the Payne station wagon. Likewise the tires from defendant's Buick were introduced into evidence over defendant's objection on the ground of unlawful search and seizure of defendant's car. The plaster casts of the tire tracks were similar to defendant's tires.

The undersheriff also testified that the point where he and the sheriff saw Vasquez and defendant parked in their respective vehicles that morning was about a mile south of Cherryvale near the intersection of the highway and an east and west county road. In

their investigation later that day they followed car tracks down this county road west of the intersection and came to an abandoned farmhouse wherein they found the personal property which had been removed from the Payne station wagon.

Defendant did not take the stand to testify in his own behalf. He called Vasquez as a witness but that witness's testimony in chief did not appear to be of too much assistance to defendant. On cross-examination his testimony of previous associations and law violations were brought out in some detail by the county attorney although they appear to have little or no connection with defendant. At the conclusion of all the evidence the jury returned its verdict of guilty on the two felony counts, as heretofore stated. The trial court received and adopted the verdict and since defendant had previously been convicted of a felony in Missouri, sentenced him as a second offender, under G. S. 1949, 21-534 and 21-107a, to a term not exceeding ten years on the first count, and on count two sentenced him to a term not exceeding fifteen years under G. S. 1949, 21-101, 21-534, and 21-107a. These sentences were assessed to run consecutively and not concurrently. Reuben E. Weatherford, Jr., and Monte Heasty, two regularly practicing attorneys of Montgomery county, were appointed by the court as counsel for defendant and represented him throughout the trial.

At the outset of the jury trial on the felony charges defendant filed a plea in abatement based on the following reasons:

"1. Both defendants herein were tried in the City Court of Independence on a complaint alleging the identical offense alleged in Count No. 3 in the information filed herein, and both defendants were convicted of said offense.

"2. In said trial in the City Court of Independence evidence was admitted of the offenses alleged in Counts No. 1 and No. 2 contained in the information herein, and said offenses might have been and were included in the complaint filed in said action in the City Court of Independence.

"3. Count No. 3 contained in the information filed herein could have been tried originally in The District Court of Montgomery County, Kansas, with Counts No. 1 and No. 2.

"4. Under the provisions of Section 62-1449 of the General Statutes of Kansas, 1949, the aforesaid conviction in the City Court of Independence operates as a bar to the prosecution of this action."

The state demurred to the above plea and such demurrer was sustained by the trial court on September 16, 1961. Thereafter defendant obtained a severance and his trial, as above set out, ensued.

After the jury returned its verdict defendant moved the court to set aside the verdict and grant a new trial because the court ad-

mitted illegal testimony over defendant's objections which prejudiced his rights, the sheriff remained in the courtroom after the court had ordered all state witnesses to remain outside, the sheriff was allowed to testify over defendant's objections, and finally, that defendant had discovered new evidence which by reasonable diligence could not have been discovered and produced at the trial to the effect that a neighbor residing on the east-west county road, whose home was farther west than the abandoned farmhouse previously referred to, could testify that the tires on his automobile on the day in question were the same size and tread as those on defendant's Buick. The motion for new trial was overruled.

The journal entry of judgment in pertinent part reflects the dismissal of count three of the information, the reading of the information to defendant, the proceeding whereby counsel was properly appointed for defendant, that time for the attorneys to confer with defendant was allowed, and the arraignment on the two counts to which defendant entered a plea of not guilty. Whereupon the county attorney served notice on defendant and his attorneys that he would ask for an increased sentence under the habitual criminal act, G. S. 1949, 21-107a, and that the cause was set for trial on October 2, 1961, approximately nineteen days after the date of arraignment.

Defendant appeals to this court from the judgment of the trial court overruling his motion for new trial, from the sentence pursuant to his conviction by the jury's verdict, and from all further orders, decrees and judgments of the trial court.

We shall treat the specifications of error in the order in which they appear in the record. The first question is whether the trial court erred in sustaining the state's demurrer to defendant's plea in abatement. The present defense counsel, who did not enter this case until the notice of appeal was filed in this court, candidly admits the state's evidence was sufficient to support the jury's verdict if the trial was otherwise free from error. However, he contends that defendant's plea in abatement should have been sustained because of the following provisions of G. S. 1949, 62-1449:

"When one is properly charged in one or more counts of a complaint, indictment, or information with an offense, or offenses, against any of the laws of the state, and upon the trial of the action evidence is admitted of other offenses which might have been included as other counts in the complaint, indictment, or information, or on which the state might have elected to rely in the action then being tried, a conviction or acquittal on the charge, or charges,

as made in the complaint, indictment, or information, shall operate as a bar to any subsequent prosecution of the same person in another action for any act or acts for which the state could have asked for a conviction under the complaint, indictment or information in the former trial."

While criminal statutes must be interpreted favorably to the defendant, the above statute is clear and specific and needs no interpretation. The record discloses that defendant was tried in the city court and convicted of a misdemeanor and at the same time, as a result of his preliminary hearing, he was bound over for trial in the district court on the two felony counts. A preliminary hearing is not the proper forum for a plea of guilty or not guilty, nor can the judge, justice of the peace, or magistrate, receive such a plea. The only thing that can be determined by the preliminary hearing is whether the crime, as charged, has been committed, and that there is probable cause for charging the prisoner with the offense, or to believe the prisoner guilty. (G. S. 1949, 62-618; 62-620.)

In our present case no record was taken of the preliminary hearing but no point or discussion is predicated thereon in this appeal. From the language of 62-1449 it is apparent a preliminary hearing could not be considered as a bar to a trial on the felonies herein involved. We think the legislature made clear by the concluding words of 62-1449 that had the evidence been used prior to the trial in the district court on the felony counts, the state would have been able to ask for a conviction in such previous proceeding. Since a conviction could not be sought in the preliminary hearing in the city court of Independence, the state cannot be charged with attempting to use the same evidence to convict defendant in the district court in violation of 62-1449.

Defendant relies on *Struble v. Gnadt*, 164 Kan. 587, 191 P. 2d 179, wherein the defendant was charged with rape of one girl and with attempted rape and rape of a second girl; on *State v. Anderson*, 172 Kan. 402, 241 P. 2d 742, where defendant was charged with murder of a woman and with felonious assault and robbery of a man; and on *State v. Bethea*, 184 Kan. 432, 337 P. 2d 684, wherein defendant was charged with a felony consisting of malicious destruction of plumbing fixtures in excess of the value of $20.00, and also with a previous malicious destruction of personal property with a value of less than $20.00.

We are unable to see how the Struble and Anderson cases are of any benefit to defendant, and the language relied on from the opin-

ion in the Bethea case is not compelling for the reason there was no contention before the court in that case in regard to 62-1449 and anything therein stated which is contrary to the above conclusion is hereby overruled.

Defendant's second contention is that the removal of the tires from his Buick automobile as well as the taking of the piece of paper tape from the interior of the Buick were in violation of defendant's rights and were erroneously received into evidence by the trial court because those two exhibits were obtained through an unlawful search and seizure of defendant's Buick. It is true the record discloses no search warrant was ever obtained for the removal of the tires or the acquisition of the paper tape and at first blush this would appear to be in violation of the rule pronounced in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, decided on June 19, 1961, as follows:

"All evidence obtained by searches and seizures in violation of the Fourth Amendment of the Federal Constitution is, by virtue of the due process clause of the Fourteenth Amendment guaranteeing the right to privacy free from unreasonable state intrusion, inadmissible in a state court." (Headnote 3, L. Ed.)

However, let us compare the circumstances of the two cases. In the Mapp case officers were seeking a person purportedly hiding in Miss Mapp's home who was wanted for questioning in connection with a recent bombing. Miss Mapp refused to admit the officers without a search warrant. The officers later forcibly gained admission to her home and in going through Miss Mapp's personal effects and papers they obtained lewd and lascivious books, pictures, and photographs, possession of which was in violation of the Ohio criminal code, and it was upon such evidence that a conviction of Miss Mapp was obtained. In our present case the sheriff had taken defendant's Buick into custody at the time he arrested defendant for commission of the crime for which he was tried herein and the Buick was properly *in custodia legis* at the time the tires were removed and the piece of paper tape taken from the interior thereof. We, therefore, are of the opinion this was not an unlawful search and seizure as contemplated in the Mapp case.

Defendant's third point relates to the state's cross-examination of defendant's witness Vasquez. Defendant contends it was error for the trial court to allow this witness to testify with such latitude as is shown in the record. Only one objection was made by defense counsel to any of the questions and answers in the cross-examination

of Vasquez and that was when the county attorney was attempting to show that Tiny Wainright was an agent of the Teamsters' Union in Springfield, Missouri. Vasquez had stated that Wainright's job was just above that of the janitor, and the following question, answer, and objection took place:

"Q. He is just above the janitor. He does some of the muscle work over there in Springfield for Jimmy Hoffa? A. Explain that muscle work.

"Q. You know what I mean muscle work, don't you, Joe?

"MR. WEATHERFORD: Object to that as improper cross-examination. It isn't within the scope of direct. Doesn't bear on this particular witness.

"THE COURT: Overruled."

The order overruling this single objection, standing alone, is not reversible error. The record shows no objections were made to any of the other questions and answers brought out by the state's cross-examination of Vasquez and the belated objection to the admission of evidence, which is raised for the first time on appeal, is not good. In *State v. Graham*, 172 Kan. 627, 242 P. 2d 1067, we find the following appropriate language:

"So far as the record shows all this evidence was admitted without objection. In fact counsel for appellant, who, we pause to note, did not participate in the trial, does not even assert that objection thereto was made in the court below. Under such conditions and circumstances claims to the effect the trial court erred in the admission of evidence are not subject to appellate review." (p. 628.)

In view of the entire record and all that has been stated herein we are compelled to conclude that defendant has failed in his duty to make it affirmatively appear his substantial rights were prejudiced or that the trial court committed reversible error.

The judgment is affirmed.