No. 60,004

STATE OF KANSAS, *Appellant/Cross-Appellee*, v. JOHN L. VAKAS, M.D., *Appellee/Cross-Appellant*.

(744 P.2d 812)

Opinion filed October 30, 1987.

*Sally Davis Pokorny*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellant/cross-appellee.

*Larry Wall*, of Wichita, Kansas, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

HOLMES, J.: The State of Kansas appeals from an order of the trial court dismissing, without prejudice, an indictment charging the defendant, John L. Vakas, M.D., with 410 counts of unlawfully distributing controlled substances in violation of the Kansas uniform controlled substances act, K.S.A. 65-4101 *et seq.* The court found that the indictment failed to state crimes against the State. The State asserts the trial court erred in dismissing the indictment, contending the language in each count of the indictment is sufficient to charge a crime. The defendant cross-appeals, asserting the trial court should have dismissed the indictment with prejudice due to prosecutorial misconduct.

The charges in the grand jury indictment read:

"COUNT I:

"THAT heretofore and to-wit on or about the 11th day of May, 1984 at and within the County of Montgomery and State of Kansas, the above named defendant, JOHN L. VAKAS, M.D., a registrant authorized to dispense and prescribe controlled substances for a legitimate medical purpose only then and there being, did then and there willfully, wrongfully, unlawfully prescribe a stimulant, to-wit: preludin which contains the controlled substance phenmetrazine to Larry Winston Terry *for other than a legitimate medical purpose or not within the scope of a professional medical practice*; all contrary to KSA 65-4107(d)(2), 65-4123 and 65-4127b.(a)(2) and against the peace and dignity of the State of Kansas.

Class A misdemeanor 1 year $2500." (Emphasis added.)

The remaining 409 counts are worded essentially the same, with each count being different only in the drug prescribed and the statute classifying it as a controlled substance, and the date, time, and person for whom it was prescribed. The penalty section also varies depending on whether the drug prescribed was an opiate or narcotic (a felony) or a stimulant (a misdemeanor).

Two of the statutes upon which the charges are based, K.S.A. 65-4123 and -4127b, have been amended since the events involved here, however, the amendments do not affect the issues in this appeal. K.S.A. 65-4123(d) states that: "A controlled substance shall not be distributed or dispensed other than for a

medical purpose." Thus, the issue concerns the effect of the additional word "legitimate" contained in each count of the indictment. The trial judge dismissed the indictment, finding it failed to state crimes against the State of Kansas and because he perceived the focus of the grand jury to be directed toward "the legitimacy of the purpose rather than the nature of the purpose, as a medical purpose, as proscribed in 65-4123(d)."

The State argues the word "legitimate" neither changes the charge nor the elements of the crime and is merely a word of description or clarification. In the alternative, it argues the word "legitimate," if inappropriate, is mere surplusage and should have been stricken from the indictment. The State also contends it was error for the trial court to speculate on the mental processes of the grand jury.

K.S.A. 65-4123 provides in part:

"(a) Except when dispensed by a practitioner, other than a pharmacy, to an ultimate user, no controlled substance in schedule II may be dispensed without the written prescription of a practitioner.

. . . .

"(d) A controlled substance shall not be distributed or dispensed other than for a medical purpose."

The language "not within the scope of a professional medical practice," included in each count of the indictment, was based upon K.S.A. 65-4101(v), which defines a practitioner as:

"(v) 'Practitioner' means a person licensed to practice medicine and surgery, dentist, podiatrist, veterinarian, scientific investigator or other person licensed, registered or otherwise authorized by law to administer and prescribe, use in teaching or chemical analysis or conduct research with respect to a controlled substance in the course of professional practice and research." (Emphasis added.)

The appellee asserts that the addition of the words "legitimate" and "not within the scope of a professional medical practice" to the language of K.S.A. 65-4123(d) changes the meaning and elements of the statute and does not state an offense under the statute. However, he does not seriously question the quoted language other than the effect of adding the word "legitimate." We agree that, when the language of K.S.A. 65-4101(v) is read in conjunction with K.S.A. 65-4123(a) and (d), the language "or not within the scope of a professional medical practice" contained in each count of the indictment was proper.

The court apparently relied upon the use of the word "legitimate" as the basis for its dismissal of the indictment. While it is true that the word legitimate is not contained in the statute, we are of the opinion that its use in the indictment does not change the elements of the crime, charge a different crime, fail to state a crime, or lessen the State's burden of proof, as contended by the appellee. Whether a controlled substance is prescribed for a "legitimate medical purpose" as opposed to a "medical purpose" is to create a distinction without a difference.

The word "legitimate" when used as a descriptive term is a word of common usage and understanding. Legitimate, when used as it was here, has been defined as "[r]eal, valid, or genuine." It is also defined as "lawful, legal, recognized by law, or according to law." Black's Law Dictionary 811 (5th ed. 1979). Appellee contends that the rule of strict construction of criminal statutes compels an interpretation of K.S.A. 65-4123(d) that the language "other than for a medical purpose" means that if a prescription is written for a medical purpose by a practitioner no crime has been committed. He contends that stating the exception as a "legitimate medical purpose," when the statute only requires a "medical purpose," reduces the burden of the prosecution and improperly states the elements of the crime. We think this is an oversimplification of the issue not justified by the statute or applicable rules of construction.

In *State, ex rel., v. American Savings Stamp Co.*, 194 Kan. 297, 398 P.2d 1011 (1965), this court considered the rule of strict construction of criminal statutes, stating:

"It is a fundamental rule that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations. (*State v. Waite*, 156 Kan. 143, 131 P.2d 708; *State v. Six Slot Machines*, 166 Kan. 361, 201 P.2d 1039; *State v. Hill*, 189 Kan. 403, 369 P.2d 365; *State v. Wade*, 190 Kan. 624, 376 P.2d 915.) The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. (*State v. Foster*, 106 Kan. 852, 189 Pac. 953.) Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. (*State v. Terry*, 141 Kan. 922, 925, 44 P.2d 258.)" 194 Kan. at 300.

The issue before us is not really a matter of the construction of the language of the statute but whether the addition of the word "legitimate" impermissibly changes the language of the statute and fails to state a crime. It would indeed be a strained con-

struction of the statute to say that the legislature intended the prescription of a controlled substance for an illegitimate purpose to be lawful and within the statutory exception. Such a determination of legislative intent and construction of the statute would be ridiculous. In *State v. Fowler*, 238 Kan. 213, 708 P.2d 539 (1985), we held:

"The rule of strict construction concerning penal statutes is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate legislative design and the true intent of the legislature." Syl. ¶ 1.

In our view, the medical purpose referred to in the statute can only mean a legitimate medical purpose. When viewed in such light the addition of the word "legitimate" does not invalidate the indictment. In *State v. Garner*, 237 Kan. 227, 699 P.2d 468 (1985), we stated:

"K.S.A. 22-3201 provides that the information shall be a plain and concise written statement of the essential facts constituting the crime charged, which information, drawn in the language of the statute, shall be deemed sufficient. The Kansas cases applying this statute hold that an information which charges an offense in the language of the statute or its equivalent is sufficient. *Further, the exact statutory words need not be used in the information if the meaning is clear.*" 237 Kan. at 236-37. (Emphasis added.)

The same is true of an indictment returned by a grand jury. We hold that the court erred in dismissing the indictment.

Next, the State asserts in the alternative that the court committed error in failing to strike the word "legitimate" from the charges in the indictment as being surplusage. K.S.A. 1986 Supp. 22-3201(3) provides:

"The court may strike surplusage from the complaint, information or indictment."

Here, the State was fully apprised of the court's position and yet the prosecutor made no attempt to have the offending word stricken. Instead, she apparently chose to stand upon her preparation of the indictment. The State cannot now be heard to complain when it made no motion to strike the word as surplusage. It is not the duty of the court to review and clean up, sua sponte, the pleadings of the parties. While we agree that the word "legitimate" is not part of the statute and may be considered surplusage, there was no error on the part of the court in failing to strike it from each charge of the indictment when no

such request was made by either party. It may well be that on remand one of the parties will seek to have the language stricken; however, any decision thereon lies within the sound discretion of the trial court after the matter has been properly presented to it.

We now turn to the cross-appeal of Dr. Vakas. He argues the indictment should have been dismissed with prejudice as a sanction against the county attorney for her prosecutorial misconduct. The defendant filed motions to dismiss the indictment on grounds of failure to comply with discovery orders and for other acts of alleged prosecutorial misconduct. He asserts the prosecuting attorney intentionally refused to comply with discovery orders, presented a biased case to the grand jury, and filed motions for the sole purpose of causing delay. Although defendant's motions were heard, the trial court made no ruling thereon.

As the trial court did not rule on the defendant's motions for dismissal due to prosecutorial misconduct and failure to comply with discovery orders, the issues are not properly before this court and there are no orders of the court to be reviewed. *Fey v. Loose-Wiles Biscuit Co.*, 147 Kan. 31, 36, 75 P.2d 810 (1938). The question of whether sanctions are justified and, if so, the nature of the sanctions to be imposed is a matter to be determined in the first instance by the trial court.

The judgment of the district court dismissing the charges against Dr. Vakas is reversed and the case is remanded for further proceedings.